UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MELVIN HERRING,
                                        Plaintiff,

            -v.-                                              9:08-CV-0101
                                                                    (GLS)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS and GLENN CHAMPAGNE,
M.D., Facility Health Service Director,

                            Defendants.

_____

APPEARANCES:                          OF COUNSEL:

MELVIN HERRING
96-A-2574
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051
Plaintiff, *pro se*

HON. ANDREW M. CUOMO                  ADRIENNE J. KERWIN, Esq.
New York State Attorney General       Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

**GARY L. SHARPE**
**U.S. District Judge**

## MEMORANDUM-DECISION and ORDER

### I. Introduction

        *Pro se* plaintiff Melvin Herring brings this action pursuant to 28 U.S.C. §

1983 ("Section 1983") alleging that defendants violated his rights under the

Eighth and Fourteenth Amendments to the United States Constitution and

pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"); and the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*).  Dkt. No. 1.  Herring seeks substantial monetary relief as well as declaratory and injunctive relief.

Presently before the court is defendants' motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6).[1]  Dkt. No. 10.  Herring has responded in opposition to the motion. Dkt. No. 11.  For the following reasons, defendants' motion is granted.

## II. Standard of Review

The standards for judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) is well-established, and will not be repeated here.  For a full discussion of the standards, the court refers the parties to its previous opinions in *Dixon v. Albany County Bd. of Elections*, No. 1:08-CV-502, 2008 WL 4238708, at *2 (N.D.N.Y. Sept. 8, 2008) (Rule 12(b)(6)).

## III. Discussion

**A.    Facts**

The facts are related as alleged by Herring in his complaint. Dkt. No. 1. Herring has been in custody of the New York State Department of Corrections

---

[1] The motion to dismiss was purportedly made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for failure to state a claim, but since it was made before defendants had filed their answer, the motion must be regarded as a motion to dismiss made pursuant to Rule 12(b)(6).

since 1996.  Dkt. No. 1 at 3.  In June 2003, while incarcerated at Ogdensburg Correctional Facility, Herring suffered a "massive MI" and was rushed to a hospital in Syracuse, New York for emergency angioplasty.  *Id*.  On June, 24, 2003, Herring was transferred to the Walsh Regional Medical Unit (Walsh RMU) for 120 days, and then transferred to Marcy Correctional Facility (Marcy), a flat facility (no stairs).  *Id*.  He received therapy while at Walsh RMU; no therapy was given at Marcy.  *Id*.  On November 11, 2003, Herring was rushed to a hospital from Marcy; two further stents were placed into Herring's heart.  *Id.* Herring received no therapy after this procedure.  *Id*.  Herring was transferred to Clinton Correctional Facility for program purposes, but because of his inability to climb stairs, was unable to program.  *Id*.

On July 5, 2006, Herring was transferred to Franklin Correctional Facility. *Id.* Herring was told that his placement at Franklin was for program purposes. *Id*.  At Franklin, there were "several hills to walk and the distance to the infirmary was long." *Id*.  On July 25, 2006, Herring was rushed to the hospital in town and then, when it was determined that he could not be helped there, he was rushed by ambulance to Albany Medical Center.  *Id*. at 4.  During this trip, Herring was in "extreme pain for 3 ½ hours, 214 miles on the highway with morphine injections to try to stop his pain."  *Id*.  After his stay at Albany Medical Center, where it was determined that Herring "showed a 'depressed LV of less

3

then 20%,'" he was sent back to Franklin and placed in general population.  *Id*.

No therapy was ordered.  *Id*.  Herring had previously written to the Director of

Classification and Movement for the Department of Corrections, asking that he

be transferred to Marcy.  *Id*.  After his arrival back at Franklin, Herring received

a response to that request indicating that he had been sent back to Franklin "to

meet his current program and health care needs."  *Id.*

On August 13, 2006, Herring filed a grievance at Franklin complaining

that he feared for his life because he was not close to a cardiac center.  *Id*.

The Central Office Review Committee denied Herring's grievance on

September 27, 2006.  *Id*. at 5. Herring states that the grievance was denied

because "transfer needs should be taken up with plaintiff's counselor and that

the Facility Health Services Director had the sole responsibility for providing

treatment to inmates under his direct care."  *Id*. at 5.

Herring submitted his first Reasonable Accommodation Request ("first

request") on August 28, 2006.  *Id*. Plaintiff asked to be moved closer to a

cardiac center for his health and safety.  *Id*.  On September 16, 2006,

defendant Champagne noted on the first request that Herring had a cardiac

disability and was restricted from heavy lifting and strenuous activities.  *Id*.

The next day, J.R. Demers, the Deputy Superintendent of Programs denied

Herring's first request, stating "none, except bottom bunk with main housing

4

dorms." *Id*. The reason given for the denial was that Herring's "cardiac needs stable, can be met under present circumstances." *Id*.

Herring submitted a second Reasonable Accommodation Request ("second request") on August 27, 2007 asking for "main housing", a request that Herring points out was already granted by the first request a year earlier. *Id*. at 6. Defendant Champagne noted on the second request that Herring had "severely reduced left ventricular systolic function" of the heart. *Id*. He also noted that Herring should not participate in sports or manual labor or walk long distances. *Id*. While Herring does not indicate in his complaint the outcome of the second request, he has attached a copy of the second request to his Memorandum of Law in opposition to this motion.[2] *See* Dkt. No. 11 at 14. J.R. Demers approved the second request stating "main only pass - no manual labor - no sports." *Id*.

In October 2007, Herring was scheduled to see a cardiologist at Coxsackie Correctional Facility, but the appointment was postponed because Franklin was not scheduling direct trips to hospitals. *Id*. On December 17, 2007, plaintiff was taken directly to Coxsackie where cardiologist Robert Miller, M.D. ordered a catherization as soon as possible. *Id*. In mid-December,

---

[2] Since the second request is incorporated by reference into Herring's complaint and is an integral part of his complaint, the Court may consider the contents of the second request in reviewing this motion to dismiss. *See Chambers*, 282 F.3d at 153.

Herring submitted a third Reasonable Accommodation Request ("third request") seeking transfer to a "facility that offers cardiac therapy or RMU that offers cardiac therapy to inmates w/ my severe heart condition." *Id.* at 6-7. Again, Herring does not indicate in his complaint the outcome of the third request, however, since he has attached a copy of the third request to his Memorandum of Law in opposition to this motion, *see* Dkt. No. 11 at 15, the Court may consider it on this motion to dismiss. *See Chambers*, 282 F.3d at 153; *see also* n.3, *supra*. Defendant Champagne completed the medical verification for the third request stating "medical has no transfer powers unless incapacitated or residing in infirmary." *Id*. J.R. Demers denied the third request stating "[r]equest is not a reasonable accommodation. Transfer to an RMU [regional medical unit] is not considered as reasonable accommodation. This is a medical decision." *Id.*

Herring was sent to Albany Medical Center on January 8, 2008 for catherization due to decreased blood flow and extreme shortness of breath. *Id.* at 7. While no further stents were inserted, the catherization "showed a sever LV disfunction [*sic*]/LB thrombus." *Id.* As of January 14, 2008, the date he filed his complaint, defendants had not moved Herring closer to a cardiac center or to an area that provides cardiac therapy to strengthen his heart.[3] *Id.*

---

[3] Effective February 26, 2008, Herring was transferred to Greene Correctional Facility. Dkt. No. 6. Greene is located in Coxsackie, New York, which is approximately a 40 minute drive

Herring claims that defendants have violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution; the Americans with Disabilities Act; and the Rehabilitation Act.

## B.    Eleventh Amendment Immunity

The Eleventh Amendment generally grants states sovereign immunity from lawsuits unless (1) Congress has abrogated a state's sovereign immunity through a statutory enactment or (2) a state has expressly waived its sovereign immunity. *Hankins v. NYS Dept. of Correctional Services*, 9:07-CV-0408, 2008 WL 2019655, at *7 (N.D.N.Y. Mar. 10, 2008).

### 1.  Section 1983 claims

Herring seeks monetary damages against the New York State Department of Corrections (DOCS) and against defendant Champagne in his official capacity pursuant to Section 1983.

> The State of New York has not consented to suit in federal court. *See Dube v. State Univ. of New York,* 900 F.2d 587, 594-95 (2d Cir.1990). Furthermore, Congress did not intend to override state immunity in enacting § 1983 . *Will*[ ] *v. Michigan Dept. of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

*Boddie v. New York State Dept. of Correctional Services*, No. 96 Civ. 3291, 1997 WL 482036, at *1 (S.D.N.Y. Aug. 20,1997).

Moreover, "[a]s DOCS is a subdivision of New York State, cases

---

to Albany Medical Center.  *See http://www.mapquest.com/maps*.

7

routinely hold that it may not be sued for monetary damages" under Section 1983. *Allah v. Juchnewioz*, No. 93 CIV 8813, 2003 WL 1535623, *3 (S.D.N.Y. Mar. 24, 2003)(citations omitted).  Defendants' motion to dismiss plaintiff's claims against DOCS for monetary damages under Section 1983 is granted.

"Eleventh Amendment immunity also extends to damage actions against State employees acting in their official capacities, because the State is the real party of interest. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101-102, 104 S. Ct. 900, 908-09 (1984); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988)."  *Lyerly v. Phillips*, No. 04 Civ. 3904, 2005 WL 1802972, at * 3(S.D.N.Y. Jul. 29, 2005).

In light of Eleventh Amendment immunity, defendants' motion to dismiss is granted with respect to Herring's Section 1983 claims for monetary damages against DOCS and against Dr. Champagne in his official capacity.  Those claims are dismissed with prejudice.

The Eleventh Amendment does not, however, bar Herring from proceeding against DOCS, or against defendant Champagne in his official capacity, for prospective injunctive or declaratory relief under Section 1983. *Gowins v. Greiner*, No. 01 CIV. 6933, 2002 WL 1770772, at *4 (S.D.N.Y. Jul. 31, 2002).  Nor is Herring barred from pursuing claims against Champagne in

8

his individual capacity.[4] *Id.*

### 2.  ADA Claims

Congress may abrogate a state's Eleventh Amendment immunity

"through legislation pursuant to its power under Section 5 of the Fourteenth

Amendment." *Press v. S.U.N.Y. at Stony Brook,* 388 F. Supp. 2d 127, 131

(E.D.N.Y.2005). A state's immunity is validly abrogated under Section 5 of the

Fourteenth Amendment when Congress "both unequivocally intends to do so

and 'act[s] pursuant to a valid grant of constitutional authority.'" *Garcia v.*

*S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 108 (2d Cir.2001)

(citations omitted).

In enacting the ADA, Congress stated that "[a] State shall not be immune

under the eleventh amendment ... from an action in [a] Federal or State court

of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202.

"The Supreme Court has affirmed that this statute is 'an unequivocal

expression of Congress's intent to abrogate state sovereign immunity.'" *Toney*

*v.* Goord, No. 04-CV-1174, 2006 WL 2496859, at *5 (N.D.N.Y. Aug. 28, 2006)

(citing *United States v. Georgia,* 546 U.S. 151, 156 (2006)). In *Georgia*, the

Supreme Court stated that "insofar as Title II [of the ADA] creates a private

---

[4] Even though some of Herring's allegations are not barred by the Eleventh Amendment, they will not be allowed to go forward unless they also state a claim that is cognizable under Section 1983.  The sufficiency of Herring's claims will be discussed below.

cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Georgia*, 546 U.S. at 159.  In light of *Georgia*, a state inmate must demonstrate that a fundamental right has been violated because of his disability in order to commence a private suit against a state entity under Title II of the ADA.  *See Lamzot v. Phillips*, No. 04 Civ. 6719, 2006 WL 686578, at *11 (S.D.N.Y. Mar. 16, 2006)("a disabled inmate in a state prison may sue the State for money damages under Title II of the ADA if the alleged Title II violations also independently violated the Eighth Amendment."); *see also Degrafinreid v. Ricks,* 417 F. Supp. 2d 403, 413 (S.D.N.Y. 2006) (an alleged Eighth Amendment violation validly abrogates state sovereign immunity under Title II of the ADA ).

The Second Circuit has held that conduct in violation of Title II of the ADA may also violate the Fourteenth Amendment where "the Title II violation was motivated *by* either discriminatory animus or ill will due to disability." *Garcia*, 280 F.3d at 112 (emphasis added); *see also Olson v. State of New York*, No. 04-CV-0419, 2007 WL 1029021, at *7-8 (E.D.N.Y. Mar. 30, 2007) (collecting cases and concluding that *"Garcia* remains good law"); *Lighthall v. Vadlamudi*, No. 9:04-CV-0721, 2006 WL 721568, at *18 (N.D.N.Y. Mar. 17, 2006) (applying *Garcia* test after finding Supreme Court did not address "the

validity of Title II's purported abrogation of sovereign immunity as to conduct that does not violate the Constitution" in *Georgia*). Thus, to the extent that Herring can be found to allege the violation of a constitutional right or that defendants behavior was motivated by "discriminatory animus" or "ill will" towards plaintiff on account of his disability, the State's Eleventh Amendment immunity is abrogated with respect to Title II of the ADA.  The sufficiency of Herring's ADA claim, and whether he states a claim sufficient to abrogate state sovereign immunity under *Georgia* or *Garcia*, will be discussed below.

### 3. Rehabilitation Act Claims

DOCS has waived sovereign immunity for claims brought under Section 504 of the Rehabilitation Act.  *See Garcia*, 280 F. 3d at 113 (a 1986 amendment to Rehabilitation Act constitutes a clear and valid "expression of Congress' intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity"); *see also Doe v. Goord*, No. 04 CV 0570, 2004 WL 2829876, at *16 (S.D.N.Y. Dec. 10, 2004)(after *Garcia*, "state agencies in New York including DOCS have continued to accept federal funds and, therefore, waived immunity from suit under Section 504 of the Rehabilitation Act").  Since all of Herring's claims under the Rehabilitation Act occurred post-*Garcia*, DOCS has waived immunity from suit under Section 504 of the Rehabilitation Act. The sufficiency of Herring's Rehabilitation Act claims

will be addressed below.

## C. Section 1983 Claims for monetary damages under the Eighth and Fourteenth Amendments against Dr. Champagne in his individual capacity

### 1. Personal Involvement

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. The personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 453 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "Further, a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (citing *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986)(other citation omitted). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A defendant is "personally involved" if he or she "directly participated in

12

the infraction." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Also, a defendant in a supervisory capacity may be "personally involved" within the meaning of Section 1983 if the state actor (1) failed to remedy the wrong after learning of the violation through a report or appeal; (2) created or continued a custom or policy under which unconstitutional practices ensued; or (3) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

Taking Herring's allegations as true, while defendant Champagne may prevail on summary judgment, the Court cannot say on a motion to dismiss that Herring can prove no facts as to his deliberate indifference claim entitling him to relief against defendant Champagne. Defendants' motion to dismiss is therefore denied in this regard.

### 2.  Sufficiency of Allegations

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (holding that the Eighth Amendment is applicable to prison inmates' treatment and conditions of confinement). The Supreme Court has applied this prohibition to the states through the Due Process Clause of the Fourteenth Amendment. *See State of Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463, 67 S. Ct. 374, 376 (1947).

> To establish an Eighth Amendment violation based on a claim that a prison official has placed an inmate's health in danger, the inmate must show that the prison official acted with "deliberate indifference" to the inmate's serious medical needs. *E.g., Helling v. McKinney,* 509 U.S. 25, 32 (1993); *Estelle v. Gamble,* 429 U.S. [97] at 104-05.

*Smith v. Masterson*, No. 05 Civ. 2897, 2006 WL 2883009, at * 14 (S.D.N.Y. Sep. 29, 2006).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)*.* A serious medical condition exists where "'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (citing *Chance,* 143 F.3d at 702 (other citation omitted). Since medical conditions vary in severity, "a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." *Harrison*, 219 F.3d at 136-37. "[S]ubjective complaints of pain are not sufficient to satisfy [the serious medical need] standard." *Thomas v. Nassau County Corrections Center*, 288 F. Supp.2d 333, 338 (E.D.N.Y. 2003) (citations omitted).

14

"[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence.") Deliberate indifference is a state of mind akin to *criminal recklessness.  Farmer,* 511 U.S. at 840 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment), equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") (internal quotation marks and citations omitted).  "Further, a delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm."  *Thomas*, 288 F. Supp.2d at 339 (citing *Chance*, 143 F. 3d at 703). "The Second Circuit has 'reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a

life threatening and fast-degenerating condition for three days, or delayed

major surgery for over two years." *Thomas*, 288 F. Supp.2d at 339 (citing

*Espinal v. Coughlin*, 98 Civ. 2579, 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3,

2002).  Even if a prisoner is able to establish delay, in order to establish

deliberate indifference, he must also show that his condition became worse or

deteriorated as a result of the delay.  *Thomas*, 288 F. Supp. 2d at 339.

Mere disagreement with prison officials about what constitutes

appropriate medical care does not state a cognizable claim under the Eighth

Amendment.  *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992).  Prison

officials have broad discretion in determining the nature and the character of

medical treatment afforded to inmates.  *Id.* (citations omitted).  An inmate does

not have the right to treatment of his choice.  *Id.* at 45 (citing *Dean v. Coughlin*,

804 F.2d 207, 215 (2d Cir. 1986); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st

Cir. 1988)).  Moreover, negligence by physicians, **even amounting to**

**malpractice**, does not become a constitutional violation because the plaintiff is

an inmate.  *Estelle*, 429 U.S. at 107; *Church v. Hegstrom*, 416 F.2d 449, 450-

51 (2d Cir. 1969)).  A plaintiff may not recover for mere claims of malpractice

or disagreement with treatment, he or she must show that the prison officials

named as defendants acted with "a sufficiently culpable state of mind."

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

Herring claims that defendant Champagne violated his rights under the Eighth Amendment and thus subjected him to cruel and unusual punishment. Herring's allegations against defendant Champagne are that (1) on three occasions, Champagne documented Herring's disability and limitations on Herring's reasonable accommodation requests (Dkt. No. 1 at 5-7); (2) Champagne had notice of Herring's "severe condition" but did not order "follow-up care with therapy for the heart" (*Id.* at 6); (3) Champagne "unprofessionally failed to diagnose plaintiff's deteriorating condition" (*id.* at 7); and (4) Champagne failed "to place plaintiff closer to a cardiac center" (*Id.*).

To the extent that Herring alleges that Champagne documented Herring's disability and limitations on Herring's requests for reasonable accommodation, Herring fails to state a claim under the Eighth or Fourteenth Amendments.  Herring has alleged no wrongdoing on the part of Champagne in this regard.

Herring's allegations that Champagne had notice of Herring's cardiac condition yet failed to order therapy or transfer Herring closer to a cardiac care center also fail to state a claim under the Eighth or Fourteenth Amendments. At best, Herring alleges a disagreement with the type of treatment he received for his heart condition. For example, while Herring himself states that he has

17

received ongoing medical care,[5] he claims that he should be receiving therapy to strengthen his heart and should be incarcerated in a facility in close proximity to a cardiac center. "Although plaintiff may subjectively believe that his care was not adequate or correct, that difference of opinion does not demonstrate deliberate indifference and does not give rise to an Eighth Amendment claim." *Flemming v. Wurzberger*, 490 F. Supp. 2d 320, 324 (W.D.N.Y.2007) (Larimer, J.) (finding no Eighth Amendment violation where the plaintiff was transferred to a special housing unit where there was no on-site psychiatric coverage).

Finally, Herring alleges that defendant Champagne "failed to diagnose plaintiff's deteriorating condition." Dkt. No. 1 at 7. In the first instance, Herring does not allege that defendant Champagne was Herring's treating physician or that he was ever personally examined by defendant Champagne. In fact, Herring alleges that he had "numerous medical appointments with facility doctor(s)" but does not indicate that defendant Champagne was among the doctors who examined him. Moreover, even if Herring had alleged that Champagne was his treating physician, an allegation of "unprofessional" diagnosis, without more, amounts to an allegation of negligence or malpractice

---

[5] By his own admissions, Herring has received extensive medical treatment for his heart condition since he arrived at Franklin Correctional Facility: he underwent two cardiac catherizations (Dkt. No. 1 at ¶¶ 14 and 27); he had "numerous medical appointments with facility doctor(s)" (*id.* at ¶ 24); and he was examined by a cardiologist (*id.* at ¶ 27). During this time, he was also sent to Albany Medical Center on two occasions (*Id.* at ¶¶ 13 and 30).

which is not actionable in a Section 1983 action.

Defendants' motion to dismiss Herring's Eighth and Fourteenth Amendment claims against defendant Champagne is granted and those claims are dismissed without prejudice.

## D.    ADA and Rehabilitation Law claims

"Section 504 of the Rehabilitation Act and Title II of the [Americans with Disabilities Act ("ADA")] are applicable to inmates in state prisons." *Allah v. Goord,* 405 F. Supp. 2d 265, 274 (S.D.N.Y.2005).

### 1.  Dr. Champagne

Defendants contend that Dr. Champagne may not, as a matter of law, be found liable under either the ADA or the Rehabilitation Act.  Dkt. No. 10, Memorandum of Law at 4.

"Damage claims against state officials in their individual capacities brought under the ADA and the Rehabilitation Act are not actionable."  *Doe v. Goord*, No. 04 CV 0570, 2004 WL 2829876, at *15 (S.D.N.Y. Dec. 10, 2004) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr.,* 280 F.3d 98, 107 (2d Cir.2001)). Therefore, to the extent that Herring is suing Dr. Champagne in his individual capacity, he fails to state a claim against Dr. Champagne.

Moreover, since the state is the real party in interest for claims under the ADA and the Rehabilitation Act, permitting lawsuits against individual

19

defendants in their official capacities would be redundant. *See Candelaria v. Cunningham*, No. 98 Civ. 6273, 2000 WL 798636 (S.D.N.Y. June 20, 2000) (there is no individual liability under Title II of the ADA or the Rehabilitation Act and "no need for official capacity litigation when an individual can sue a government entity directly."); *Hallett v. New York State Dept. of Correctional Services*, 109 F. Supp. 2d 190, 197 (S.D.N.Y.2000) ("Because plaintiff is able to assert his ADA and Rehabilitation Act claims against DOCS directly, I find that there is no justification for allowing plaintiff to also assert ADA and Rehabilitation Act claims against the individual defendants in their official capacities."); *Andino v. Goord*, No. 06-CV-455A, 2008 WL 724209, at *2 (W.D.N.Y. Mar. 17, 2008) (same).

Therefore, Herring's claims against defendant Dr. Champagne under the Americans with Disabilities Act and the Rehabilitation Act are dismissed in their entirety, with prejudice.

### 2.  New York State Department of Corrections

In order to state a claim under Title II of the ADA, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity. *Smith v. Masterson*,

538 F. Supp. 2d 653, 657 (S.D.N.Y. 2008) (citing *Clarkson v. Coughlin,* 898 F.

Supp.1019, 1037 (internal quotation marks and citations omitted).

Additionally, to establish a cause of action under § 504 of the Rehabilitation

Act, 29 U.S.C. § 794(a), the prisoner must show:

> (1) that he has a disability for purposes of the Rehabilitation Act;
> (2) that he was "otherwise qualified" for the benefit that has been
> denied; (3) that he has been denied the benefits "solely by reason"
> of his disability; and (4) that the benefit is part of a "program or
> activity receiving Federal financial assistance."

*Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998) (quoting *Flight v. Gloeckler,*

68 F.3d 61, 63 (2d Cir.1995)).  "Since Title II of the ADA and § 504 of the

Rehabilitation Act are so closely related, 'unless one of those subtle

distinctions is pertinent to a particular case, [the Second Circuit will] treat

claims under the two statutes identically.'" *Lighthall v. Vadlamudi*, 9:04-CV-

0721, 2006 WL 721568, 19 (N.D.N.Y. Feb. 6, 2006)(citing *Henrietta D. v.

Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003)).

> To establish a case under Title II of the ADA, a plaintiff
> must prove, among other things, that he has been
> excluded from participation in, denied the benefits of, or
> subjected to discrimination under a program *solely
> because of his disability. See Henrietta D. v.
> Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003); 42 U.S.C.
> § 12132. The elements of a claim under § 504 of the
> RA are substantially the same. *See id.;* 29 U.S.C. §
> 794(a).

*Giraldi v. Board of Parole*, No. 9:04-CV-877, 2008 WL 907321, at *1 (N.D.N.Y.

Mar. 31, 2008).

Defendants argue that Herring has failed to state a claim against DOCS under either the ADA or the Rehabilitation Act.  Dkt. No. 10, Memorandum of Law at 7-9. In his complaint, Herring claims that he is disabled because he suffers from a heart condition.  Dkt. No. 1.  For purposes of this motion, the Court will assume that Herring is an individual with a disability within the meaning of the ADA and the Rehabilitation Act.  Herring does not, however, allege that he was denied programs or services on account of his disability. There are no allegations that any actions taken by the defendants against Herring were taken because he suffers from cardiac disease.  Therefore, Herring fails to sufficiently allege a claim under either the ADA or the Rehabilitation Act.

Moreover, Eleventh Amendment immunity is only waived under the Title II of the ADA when a plaintiff alleges a constitutional claim or when defendants behavior was motivated by "discriminatory animus" or "ill will" towards plaintiff on account of his disability.  The Court has determined that Herring's Eighth and Fourteenth Amendment claims fail to state a cause of action. *See* Section D, *supra*).  Since Herring has not alleged a constitutional violation or that the defendants' behavior was motivated by "discriminatory animus" or "ill will" towards plaintiff on account of his disability, his allegations are insufficient to abrogate the state's Eleventh Amendment immunity with respect to his ADA

claims.

Defendants' motion to dismiss Herring's ADA and Rehabilitation Act claims against DOCS is therefore granted and those claims are dismissed without prejudice.

**E.    Plaintiff's claims for Injunctive Relief pursuant to Section 1983**

Having determined that the Eleventh Amendment does not bar Herring from proceeding against DOCS, or against defendant Champagne in his official capacity, for injunctive or declaratory relief under Section 1983, the Court will address those requests.

As the Second Circuit noted in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992), in order to be granted a preliminary injunction, the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district Court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre*, 850 F.Supp. 143, 144 (N.D.N.Y. 1994) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge that denied inmate's request for injunctive relief).  Moreover, district courts may grant declaratory relief only when an actual case or controversy exists. *Stronko v. Bergin*, 843 F. Supp. 827, 828 -829 (N.D.N.Y. 1994).

In this case, the Court has found that the complaint filed by Herring fails to state a claim upon which relief may be granted.  Without a valid complaint, Herring can not possibly establish that any of his claims have a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.  Nor can Herring demonstrate that an actual case or controversy exists. Accordingly, Herring's requests for injunctive relief and declaratory relief are dismissed.

Additionally, the Second Circuit has held that an inmate's requests for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976); *see also Prins v. Coughlin*, 76 F.3d 504 (2d cir. 1996), citing *Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.), cert. denied*,* 492 U.S. 909, 109 S. Ct. 3224 (1989)(it is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility);  *Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir.1986)(same). In this case, since Herring is no longer incarcerated at Franklin Correctional Facility, his claims for injunctive and declaratory relief against defendant Champagne are also dismissed as moot.

24

## IV.  Conclusion

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that defendant's motion to dismiss is **GRANTED** in its entirety as follows: (1) Herring's claims for monetary damages pursuant to Section 1983 against the New York State Department of Corrections and Dr. Champagne in his official capacity are dismissed with prejudice; (2) Herring's claims against Dr. Champagne pursuant to the ADA and the Rehabilitation Act are dismissed in their entirety with prejudice; (3) Herring's Section 1983 claims against Dr. Champagne in his individual capacity are dismissed without prejudice; (4) Herring's claims against the New York State Department of Corrections pursuant to the ADA and the Rehabilitation Act are dismissed without prejudice; (5) Herring's claims for declaratory and injunctive relief against Dr. Champagne are dismissed as moot; and (6) Herring's claims for declaratory and injunctive relief against the New York State Department of Corrections are dismissed without prejudice; and it is further

**ORDERED** that Herring is granted thirty (30) days from the date of this Court's Order to file an amended complaint with respect to his (1) Eighth Amendment claims against defendant Champagne in his individual capacity; (2) Title II ADA claims and Rehabilitation Act claims against the New York State Department of Corrections; and (3) requests for injunctive and

declaratory relief against New York State Department of Corrections; and it is further

**ORDERED** that if Herring does not file an amended complaint within thirty days as set forth above, the Clerk shall enter Judgment dismissing this action without further Order of the Court; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum-Decision and Order upon the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated:    December 11, 2008

Gary L. Sharpe
U.S. District Judge